## BONSALEM v. BYRON S. S. CO., Limited.
### No. 388.

Circuit Court of Appeals, Second Circuit.
June 1, 1931.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Vernon S. Jones, Walter X. Connor, and Robert P. Nash, all of New York City, of counsel), for appellant.

Jesse L. Rosenberg, of New York City, for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellee, a French Algerian, signed shipping articles in the British Consular office and labored as a fireman on the steamship Lord Guilford, of British registry. The ship sailed for Greece and, on January 10, 1924, arrived at Palermo, Italy. On that day, appellee, informed by other members of the crew that they had received wages, went to the chief steward and asked permission to see the mate to obtain his earned wages. Whereupon, without cause, the steward struck him with a broom and otherwise brutally beat him, and, he says, that he was also assaulted by the captain, chief mate, and other officers, and that he was handcuffed, and, but for the interference of a shore watchman, he would have been further assaulted. He was treated in the hospital. Later he returned to the ship. He made complaint in the presence of the captain and chief mate at the consul's office, but the consul referred the complaint to the general consul at Pirsens. The latter advised him to make complaint to the general consul at Con-

stantinople, and appellee says the mate refused to allow him to do so. He was later transferred to the steamship Byron, owned by the same company, and returned to New York in February or March, 1924. When paid off at the consul's office in New York, he says he made claim for damages for the injury to his nose. He was advised to make his claim in England. He did not do so, but wrote a letter to the Board of Trade, receiving no reply. He started an action March 30, 1926, against the National Steam Navigation Company of Greece, mistaking it for the owner or agent of the ship upon which he was assaulted. Because of the delay in instituting this libel, a plea of laches is made. We need not consider that plea, for the appellee has not established that he is entitled to damages in this suit.

█ The Lord Guilford was a British ship, and the assault, if committed, was in Italian waters. The libel does not plead the British or Italian law. The applicable law should be the lex loci delicti, which must be either the law of the flag (British) or the law of the territorial waters (Italian). In Cain v. Alpha S. S. Corp., 35 F.(2d) 717, we applied the law of the flag, but that was also the law of the forum. In some cases, the law of the territorial waters has been applied, not the law of the flag. But in such cases the law of the territorial waters was likewise the law of the forum. Heredia v. Davis, 12 F.(2d) 500 (C. C. A. 4); The Hanna Nielsen, 25 F.(2d) 984 (D. C. W. D. Wash.). Where the territorial waters as well as the flag are foreign, the rule is to apply the law of the flag. The Hanna Nielsen, 273 F. 171 (C. C. A. 2); The Lamington (D. C.) 87 F. 752. In Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40, the action was for personal injuries which occurred in Cuba. Cuban law was not established, and the plaintiff had judgment on the theory that, if the Cuban law differed from the lex fori, it was for the defendant to establish it. The Supreme Court reversed, holding that it was incumbent upon the plaintiff to establish the Cuban law, and, since Cuba was a civil law jurisdiction, there was no basis upon which to assume its law the same as our common law.

█ A recovery will not be allowed under unproved foreign law if it cannot be had under the lex fori, and we think that, under the American law, recovery may not be had here. Indeed, the basis for such recovery would not be rudimentary enough to permit a presumption that the foreign law was the same

as our own. At most, a recovery may not be had under our law unless an assault was committed in the master's presence, and he failed to protect the seaman, or the assault was a disciplinary measure. A recovery might be allowed on the theory of incompetence of officers which constituted unseaworthiness, and such brutality of treatment of a seaman would constitute incompetence, for the owner is unqualifiedly bound to provide a seaworthy vessel. The Rolph, 299 F. 52 (C. C. A. 9). In either case, the basis of recovery would not seem to be sufficiently fundamental to permit the assumption here that the foreign law is the same as the lex fori. As held in the case of Cuba R. R. Co. v. Crosby, supra, where the right of recovery for tort committed in a foreign jurisdiction arises only by virtue of the law of that jurisdiction, such law is part of the plaintiff's case, and must be pleaded and proved as a fact, but the recognized exception to the rule is that it will be presumed that liability exists where the wrong is one of those "rudimentary acts or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person or conversion of goods." 222 U. S. 478, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40. See G. Gerli & Co., Inc., v. Cunard S. S. Co. (The Berengaria), decided March 3, 1931, 48 F.(2d) 115 (C. C. A. 2). The American admiralty courts will not presume that the foreign general law of civil law jurisdictions is the same as that of the United States, although it will be presumed that the law of common law countries is the same. In the Hanna Nielsen, 273 F. 171, this court held it was incumbent upon the libelant to show the English law on which he relied for recovery of care and maintenance, since such relief arises out of contract. In The Scotland, 105 U. S. 24, 29, 26 L. Ed. 1001, the court said: "Hence, if a collision should occur in British waters, at least between British ships, and the injured party should seek relief in our courts, we would administer justice according to the British law, so far as the rights and liabilities of the parties were concerned, provided it were shown what that law was. If not shown, we would apply our own law to the case."

█ Therefore, in the absence of allegation or proof to the contrary, the appellee cannot succeed with this libel. The ship or shipowner is not liable for injuries received by a seaman from an assault committed outside the scope of the employment of those on the vessel who are alleged to have assaulted him.

This appellee was assaulted without provocation, and the assault was not committed by any officer of the vessel in furtherance of the appellant's business. The appellant did not authorize the officers of the ship to beat and assault him without cause or for a reason unconnected with the navigation of the ship. In Davis v. Green, 260 U. S. 349, 43 S. Ct. 123, 67 L. Ed. 299, an employer was held not liable to the estate of an employee who was killed by a brutal assault committed on him by a fellow servant not in the course of their common employment. As here, the assault was committed for some undisclosed reason.

The Jones Act (41 Stat. 988) has no application. If it had any bearing, the action was not brought within two years from the day the cause of action accrued. This is a condition precedent to obtaining the benefits of the act. Reading Co. v. Koons, 271 U. S. 58, 46 S. Ct. 405, 70 L. Ed. 835; American R. R. Co. v. Coronas, 230 F. 545, L. R. A. 1916E, 1095 (C. C. A. 1).

Decree reversed.